605 A.2d 1240

**COMMONWEALTH of Pennsylvania**

v.

**Anita Marie KEMBLE, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 12, 1991.

Filed Feb. 27, 1992.

Reargument Denied May 8, 1992.

Jerry A. Philpott, Duncannon, for appellant.

Gloria J. McPherson, Asst. Dist. Atty., Shermansdale, for Com., appellee.

Before OLSZEWSKI, HUDOCK and BROSKY, JJ.

BROSKY, Judge.

Anita Kemble appeals from the judgment of sentence of the trial court following her jury trial conviction of driving under the influence of alcohol.[1]

Appellant claims on appeal that (1) the trial court erred in admitting evidence regarding appellant's alleged impaired ability to operate her automobile; (2) the trial court erred in instructing the jury regarding appellant's alleged impaired driving ability; and, (3) the prosecutor included improper comments in his closing argument. We reverse the judgment of sentence of the trial court and remand for a new trial.

Appellant first claims that since she was only charged with 75 Pa.C.S. § 3731(a)(4) the trial court erred in permitting the Commonwealth to present evidence regarding, *inter alia*, appellant's alleged erratic driving, "staggered ... gate [sic]", "smell[ ]" of alcohol, "fail[ure] of a sobriety test", mood swings and uncooperative behavior. Appellant's Brief at 4. Appellant avers that said evidence was irrelevant, and, in the alternative, immaterial and prejudicial.

As stated, *supra*, appellant was originally charged with both 75 Pa.C.S. § 3731(a)(1) and § 3731(a)(4). Section 3731 states, in pertinent part,

(a) Offense defined.—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:

---

1. 75 Pa.C.S. § 3731(a)(4). We note that appellant was originally also charged with 75 Pa.C.S. § 3731(a)(1) but that charge was dismissed at appellant's preliminary hearing.

(1) under the influence of alcohol to a degree which renders the person incapable of safe driving;

. . . .

(4) the amount of alcohol by weight in the blood of the person is 0.10% or greater.[2]

The charge relating to § 3731(a)(1) was dismissed at appellant's preliminary hearing. Hence, at appellant's trial the Commonwealth only sought and obtained a conviction regarding § 3731(a)(4). The trial court accurately informed the jury, prior to the commencement of testimony, that "[appellant's] blood-alcohol count at the time of operation [of her vehicle is] the sole issue in this case." N.T., 1/22/91, at 11–12.

At trial, before the introduction of any evidence regarding the intoxilyzer (breath) test performed upon appellant, the arresting officer testified that he observed appellant operating her automobile and that she made an extremely wide turn, nearly went down a one-way street and veered directly in front of his patrol car. He testified that he directed appellant to park her car. The officer also testified that appellant had difficulty determining which document was her registration card, staggered when she exited her automobile, possessed an odor of alcohol, leaned against a building and failed two sobriety tests. *Id.* at 14, 15, 16, 17, 18. Appellant was transported to the police station for the purpose of the administration of an intoxilyzer test. The

2. 75 Pa.C.S. § 1547 states, in pertinent part,

(c) In any ... proceeding ... in which the defendant is charged with a violation of section 3731 ... the amount of alcohol ... in the defendant's blood, as shown by chemical testing of the person's breath, ... which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

. . . .

(d) Presumptions from amount of alcohol.—If chemical testing of a person's breath ... shows:

. . . .

(3) That the amount of alcohol by weight in the blood of the person tested is 0.10% or more, this fact may be introduced into evidence if the person is charged with violating section 3731.

arresting officer testified that subsequent to the test and conveyance of the results to appellant [3] she vacillated between an "emotional" mood and a "combative" mood, and, was uncooperative.[4] *Id.* at 29.

The aforementioned evidence could have clearly impacted upon the instant jury's determination of whether appellant's blood alcohol content was .10% or greater at the time she was operating her automobile since the validity of the intoxilyzer test was disputed at trial. Appellant testified that she was permitted to utilize a ladies room immediately prior to the intoxilyzer test, and, due to a dry mouth attributable to nervousness, drank water from the sink. *Id.* at 55. The officer who administered the test testified that if a person places any fluids into her mouth within twenty minutes prior to the test then "the test is in jeopardy." [5] *Id.* at 43. The officer also testified that appellant did not place any fluids into her mouth within twenty minutes prior to the test.[6]

Our Court stated in *Moran v. G. & W.H. Corson, Inc.,* 402 Pa.Super. 101, 586 A.2d 416 (1991),

Questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. The

3. The officer who administered the intoxilyzer test testified that appellant's blood alcohol content at the time she operated her automobile was greater than .10%.

4. All of the foregoing police testimony related to appellant's alleged impaired ability to operate her automobile due to alleged consumption of an excessive amount of alcohol; said testimony is termed "impairment evidence."

5. 67 Pa.Code § 77.24(a) states, "The person to be tested with breath test equipment shall be kept under observation by a police officer or certified breath test operator for at least 20 consecutive minutes immediately prior to administration of the first alcohol breath test given to the person, during which time the person may not have *ingested* alcoholic beverages or other *fluids,* regurgitated, vomited, eaten or smoked. [Emphasis added.]

6. It is not inconceivable that the jury, when faced with inconsistent testimony regarding the validity of the results of the intoxilyzer test performed upon appellant, could have factored the impairment evidence into its deliberation regarding whether appellant's blood alcohol level was .10% or greater.

basic requisite for the admissibility of any evidence in a case is that it be competent and relevant. Though 'relevance' has not been precisely or universally defined, the courts of this Commonwealth have repeatedly stated that evidence is admissible if, and only if, the evidence logically or reasonably tends to prove or disprove a material fact in issue, tends to make such a fact more or less probable, or affords the basis for or supports a reasonable inference or presumption regarding the existence of a material fact.

*Id.*, 402 Pa.Superior Ct. at 124, 586 A.2d at 428.

■ The elements of the offenses defined in 75 Pa.C.S. § 3731(a)(1) and § 3731(a)(4) are not identical. *Commonwealth v. Slingerland*, 358 Pa.Super. 531, 518 A.2d 266 (1986). "Subsection (a)(4) presumes that an operator with a blood alcohol content of 0.10% or greater is unfit to drive, whereas subsection (a)(1) requires proof that the defendant was, in fact, incapable of safe driving because of an excessive consumption of alcohol." *Id.*, 358 Pa.Superior Ct. at 535, 518 A.2d at 268. Section 3731(a)(4) simply creates a presumption that a person is unfit to drive if the Commonwealth demonstrates, via, *inter alia*, an intoxilyzer test, that her blood alcohol level was .10% or greater.[7] If an (a)(4) charge was, as in the instant case, unaccompanied by an (a)(1) charge, then the only relevant evidence that would prove the fact that a defendant violated § 3731(a)(4) would relate to the existence of an intoxilyzer test, the results of the test, the reliability of the intoxilyzer machine, the qualifications of the person who administered the test, the procedures utilized in conducting the test and the methods em-

___

7. The legislature, when it enacted § 3731((a)(4), made the operation of a motor vehicle while having a blood alcohol content of .10% or greater a *per se* violation of the Vehicle Code. *Commonwealth v. Gonzalez*, 519 Pa. 116, 546 A.2d 26 (1988). The introduction of the *per se* provision embodied in § 3731(a)(4) eased the prosecutor's burden of proof in a driving under the influence case since if the Commonwealth "can show that the accused's BAC [blood alcohol content] was 0.10% or more at the time of arrest, a drunk driving conviction inevitably will follow." Edwin W. Tompkins III, *The New Pennsylvania Drunk Driving Law: Last Call for the One-For-The-Road Era*, 87 Dickinson L.Rev. 805, 815 (1983).

ployed in arriving at the test results.[8] In contrast, in a § 3731(a)(1) prosecution the Commonwealth may introduce evidence regarding a defendant's behavior prior to her arrest and/or during or subsequent to her arrest; the Commonwealth may introduce evidence regarding the number of alcoholic drinks consumed by a defendant, her illegal or erratic driving behavior, her apparent "state of mind" at the time in issue, the existence of an odor of alcohol emanating from a defendant, the fact that her eyes were bloodshot and the fact that she "sway[ed] and sagg[ed]" subsequent to her exit from her automobile. *Commonwealth v. Gonzalez*, 519 Pa. 116, 546 A.2d 26 (1988). Additionally, in a § 3731(a)(1) prosecution, so long as the defendant's blood alcohol level exceeds .05%, the Commonwealth may introduce evidence regarding that defendant's blood alcohol level.[9] *Id.;* 75 Pa.C.S. § 1547(d)(2), (3).

■ Therefore, any evidence that is relevant to prove impairment is admissible in a § 3731(a)(1) prosecution.[10] However, a § 3731(a)(4) charge, when unaccompanied by a § 3731(a)(1) charge, involves a narrowly focused inquiry that is solely concerned with a determination of whether a defendant had a .10% or greater blood alcohol level at the time that she drove her automobile. During such an inquiry impairment evidence [11] is not relevant since it does not logically or reasonably tend to prove or disprove that a

**8.** "A successful § 3731(a)(4) prosecution does not require proof of impairment during vehicle operation, but requires proof, generally by a blood alcohol test, that the defendant's BAC [blood alcohol content] equalled or exceeded .10 percent at the time of vehicle operation." John D. LaRocca, *Admissibility of Delayed Blood Test Results*, 62 Temple L.Rev. 757, 760 (1989).

**9.** "To prove a § 3731(a)(1) violation, the prosecution must establish that the defendant's ability to operate a motor vehicle was impaired during vehicle operation. The prosecution may introduce any evidence that is relevant to prove impairment due to alcohol, including the operator's BAC [blood alcohol content] and observational evidence of the defendant's condition." *Id.* at 759.

**10.** Impairment evidence is also relevant in a prosecution that involves §§ 3731(a)(1) *and* (a)(4) charges. *Commonwealth v. Gonzalez, supra.*

**11.** In the instant case the impairment evidence included testimony regarding observation of appellant's operation of her automobile,

defendant's blood alcohol level was .10% or greater at the time that she drove her automobile, it does not tend to make such a fact more or less probable and it does not afford a basis for or support a reasonable inference or presumption regarding whether a defendant's blood alcohol level was .10% or greater. *Moran v. G. & W.H. Corson, Inc., supra.* As mentioned, *supra,* the admission of the impairment evidence could have been particularly prejudicial to appellant since the validity of the results of her intoxilyzer test were disputed at trial. Since the impairment evidence was not relevant the trial court abused its discretion in admitting said evidence. Hence, we remand this case for a new trial.

Since we are granting appellant a new trial it is unnecessary for us to address her second and third issues.

Judgment of sentence reversed. Case remanded for a new trial. Jurisdiction relinquished.

observation regarding appellant's behavior prior to, during, and subsequent to her arrest, observation regarding an odor of alcohol emanat-