## Commonwealth v. Barker

*Kevin McBeth, assistant district attorney,* for the Commonwealth.

*Andrea Mertz, assistant public defender,* for defendant.

BUCCI, *J.,* August 29, 2006—

## PROCEDURAL HISTORY

Appellant, Scott Barker, was charged with two counts of involuntary deviate sexual intercourse,[1] three counts of aggravated indecent assault,[2] disseminating explicit sexual material to a minor,[3] endangering the welfare of a child,[4] corruption of minors,[5] and three counts of indecent assault.[6]

---

1. 18 Pa.C.S. §3123(a)(7), 18 Pa.C.S. §3123(b).
2. 18 Pa.C.S. §3125(b), 18 Pa.C.S. §3125(a)(1), 18 Pa.C.S. §3125(a)(8).
3. 18 Pa.C.S. §5903(c)(1).
4. 18 Pa.C.S. §4304.
5. 18 Pa.C.S. §6301(a)(1).
6 18 Pa.C.S. §3126(a)(7), 18 Pa.C.S. §3126(a)(1), 18 Pa.C.S. §3126(a)(8).

On November 21, 2005, appellant pled guilty to one count of involuntary deviate sexual intercourse and corruption of minors. Pursuant to a plea agreement with the Commonwealth, appellant was sentenced on May 25, 2006 to five to 10 years incarceration followed by five years probation. On this same date, a Megan's Law hearing was held, during which this court heard testimony from Dr. Veronique Valliere of the Pennsylvania Sexual Offender Assessment Board and Dr. Timothy Foley, appellant's expert. Following the hearing, this court determined that appellant is a sexually violent predator.

Thereafter, appellant filed a timely notice of appeal to the Superior Court on June 12, 2006. On June 14, 2006, this court entered an order requiring appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. §1925(b). On June 27, 2006, appellant filed his concise statement, raising the following issues:

(1) The evidence presented was insufficient to prove by clear and convincing evidence that defendant meets the statutory definition of being a sexually violent predator pursuant to 42 Pa.C.S. §9792.

(2) The trial court erred in not rendering the testimony of the sexual offender assessor inadmissible because the assessor based her findings on hearsay statements of mere uncorroborated reports and allegations and facts beyond the limited facts of which defendant plead guilty.

(3) The trial court erred by finding that defendant was a sexually violent predator where the finding was contrary to the weight of the evidence.

## STATEMENT OF FACTS

The disturbing events that led to appellant's conviction began in 1998, when appellant orally raped his 4-year-old stepdaughter, C.E. C.E. described to investigators an ongoing pattern of sexual assault by appellant. She reported that appellant put his penis inside her crotch, rubbed her genitals with his hand, forced her to masturbate him, and orally raped her by both putting his mouth on her vagina and putting his penis in her mouth. The victim also reported that appellant had her watch pornography and would put his penis between her naked buttocks and "move up and down." She described semen and ejaculate, saying he would but his penis in her mouth until "stuff" came out. C.E. reported that appellant once made her masturbate him in a park. (Commonwealth exhibit no. 1, sentencing hearing, 5/25/06, at 1-2.)

When interviewed by investigators, appellant admitted to the sexual abuse of his stepdaughter. He admitted to repeatedly orally raping C.E., as well as to simulating sex with her by putting his penis between her legs or buttocks. Appellant was quite blatant in these attacks, reporting that he once forced C.E. to masturbate him on a park bench and that he would assault her with other children in the home. In fact, appellant was actually caught twice by his wife, but persisted in his assaults. It appears that appellant abused C.E. from 1998 to 2000, stopped for a few years, and then began again in 2003. On September 27, 2004, Berks County Children and Youth Services received a report of the sexual abuse. (Commonwealth exhibit no. 1, sentencing hearing, 5/25/06, at 1-2.)

## ADMISSABILITY OF
## DR. VALLIERE'S TESTIMONY

Appellant contends that this court erred permitting the testimony of Dr. Valliere, a member of the Pennsylvania Sexual Offender Assessment Board, because she based her assessment on hearsay statements. Dr. Valliere utilized perhaps a dozen different sources in making her evaluation, including the affidavit of probable cause, bail information, this court's order for the Sexual Offender Assessment Board evaluation, the Child Protective Services report, the criminal docket history, a drawing by the victim, an investigation report by the Pennsylvania Sexual Offender Assessment Board investigator, a letter from appellant's attorney, the police criminal complaint, a Reading Police Department summary incident report, records from Berks County Children and Youth Services, a sex offender evaluation, and a transcript of appellant's guilty plea hearing. (Commonwealth exhibit no. 1, sentencing hearing, 5/25/06, at 1.) (N.T., sentencing hearing, 5/25/06, at 11.) Appellant objects to all of these sources except the guilty plea colloquy. (N.T., sentencing hearing, 5/25/06, at 12.)

"[A]n appellate court may reverse a trial court's ruling regarding the admissibility of evidence only upon a showing that the trial court abused its discretion." *Commonwealth v. Johnson,* 874 A.2d 66, 72 (Pa. Super. 2005), citing *Commonwealth v. Minerd,* 562 Pa. 46, 54, 753 A.2d 225, 229 (2000). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias,

prejudice, ill will or partiality, as shown by the evidence or the record." *Johnson,* 874 A.2d at 72.

To be admissible, evidence must be competent and relevant. *Commonwealth v. Freidl,* 834 A.2d 638, 641 (Pa. Super. 2003). The courts of this Commonwealth have repeatedly held that evidence is admissible if, and only if, the evidence logically or reasonably tends to prove or disprove a material fact in issue, tends to make such fact more or less probable, or affords the basis for or supports a reasonable inference or presumption regarding the existence of a material fact. *Id.* See also, Pa.R.E. 401.

Pennsylvania Rule of Evidence 703 provides that:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

Dr. Valliere testified that all the items she used in her sexual offender assessment are the type of information commonly used by experts in rendering similar assessments. (N.T., sentencing hearing, 5/25/06, at 11.) Therefore, this court properly admitted her testimony pursuant Pa.R.E. 703.

## SUFFICIENCY OF THE EVIDENCE

The appropriate standard of review regarding the sufficiency of the evidence is "whether the evidence admit-

ted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all the elements of the offenses." *Commonwealth v. DeJesus,* 567 Pa. 415, 422, 787 A.2d 394, 398 (2001). "At the hearing prior to sentencing, the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator." 42 Pa.C.S. §9795.4(e)(3). Accordingly, when reviewing the sufficiency of the evidence regarding the determination of sexually violent predator status, the trial court will be reversed only if the Commonwealth has not presented clear and convincing evidence to enable a trial court to determine that each element required by the statute has been satisfied. *Commonwealth v. Krouse,* 799 A.2d 835, 838 (Pa. Super. 2002).

The determination that a defendant is a sexually violent predator is made through several steps with the final decision in the hands of the trial court. A sexually violent predator is defined as, "a person who has been convicted of a sexually violent offense as set forth in section 9795.1 (relating to registration) and who is determined to be a sexually violent predator under section 9795.4 (relating to assessments) due to a mental abnormality[7] or personality disorder that makes the person likely to engage in predatory[8] sexually violent offenses." *Krouse,* 799 A.2d

---

7. Mental Abnormality: A congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons. 42 Pa.C.S. §9792.

8. Predatory: An act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained, or promoted,

at 838 (citing 42 Pa.C.S. §9792 "Sexually Violent Predator").

Once a defendant is convicted of an offense under section 9795.1, the trial court must order the Pennsylvania Sexual Offenders Assessment Board to assess the defendant pursuant to the section 9795.4(b) factors. These assessment factors include the following:

"(1) facts of the current offense, including:

"(a) whether the offense involved multiple victims

"(b) whether the individual exceeded the means necessary to achieve the offense

"(c) the nature of the sexual contact with the victim

"(d) relationship of the individual to the victim

"(e) age of the victim

"(f) whether the offense included a display of unusual cruelty by the individual during the commission of the crime

"(g) the mental capacity of the victim

"(2) prior offense history, including:

"(a) the individual's prior criminal history

"(b) whether the individual completed any prior sentences

"(c) whether the individual participated in available programs for sexual offenders

"(3) characteristics of the individual, including:

"(a) age of the individual

---

in whole or in part, in order to facilitate or support victimization. 42 Pa.C.S. §9792.

"(b) use of illegal drugs by the individual

"(c) any mental illness, mental disability, or mental abnormality

"(d) behavioral characteristics that contribute to the individual's conduct

"(4) factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense." 42 Pa.C.S. §9795.4(b).

Once a written report is submitted detailing the board's findings, the court holds a hearing to determine if the Commonwealth can prove by clear and convincing evidence that the defendant is a sexually violent predator.

In the present case, this court relied heavily on the findings of Dr. Valliere and determined that her testimony was credible in finding appellant to be a sexually violent predator. As stated above, the Commonwealth must prove by clear and convincing evidence that appellant has a mental abnormality or personality disorder that makes him likely to engage in sexually violent offenses in the future and that he engaged in predatory behavior. In this case, both Dr. Valliere and Dr. Foley agreed that appellant suffers from a mental abnormality, specifically pedophilia, and that he has engaged in predatory behavior. (N.T., sentencing, 5/25/06, at 13, 18, 42.) However, they disagreed about whether that abnormality makes him likely to engage in predatory sexually violent offenses in the future. This court finds that the Commonwealth has established by clear and convincing evidence that it does.

In making the determination that the Commonwealth proved by clear and convincing evidence that his mental

abnormality would make him likely to engage in predatory sexually violent offenses, this court carefully considered both Dr. Valliere's testimony and Dr. Foley's, as well as the factors listed in the Megan's Law II statute as listed above.

Dr. Valliere started by explaining how she determined appellant met the criteria for pedophilia. She considered that appellant sexually assaulted a very young child repeatedly over a five-year period and that he persisted in his abuse even after being caught. (N.T., sentencing, 5/25/06, at 13-15.) She noted that there is no cure for pedophilia. (N.T., sentencing, 5/25/06, at 16.) While mental health professionals can assist pedophiles in controlling their desire, they cannot eliminate those desires and consequently, pedophiles are always at risk of re-offending. (N.T., sentencing, 5/25/06, at 16.)

Dr. Valliere also addressed the factors listed in section 9795.4(b). She noted that this was not a case where the defendant committed one act against the victim. Appellant assaulted C.E. numerous times over a five-year period. On more than one occasion, the abuse occurred when other people where present in the residence or in public. Dr. Valliere also noted that appellant's first offense was "extremely escalated, oral penetration of a small child." (N.T., sentencing, 5/25/06, at 20.)

"So what that tells us is that either in practice or in fantasy [appellant] became so comfortable with breaking those sexual barriers of raping a small child that he was able to immediately, you know, gain an erection and force a 4-year-old to suck his penis. That's a pretty escalated initial offense behavior for the very first time somebody

offends somebody, unless as I said, they'd overridden those internal and external barriers to that type of rape and deviance prior." (N.T., sentencing, 5/25/06, at 20.)

The victim's very young age gave her limited emotional and mental capacity. (N.T., sentencing, 5/25/06, at 21.) Additionally, she was very vulnerable as a result of her relationship to him, as well as her mother's failure to protect her from the abuse once she became aware of it. (N.T., sentencing, 5/25/06, at 21.)

Dr. Valliere noted that appellant had no known criminal history beyond a possible juvenile theft offense and that there was no evidence he engaged in gratuitous acts of violence or torture in abusing the victim. (N.T., sentencing, 5/25/06, at 19-21.) However, she testified that most offenders who meet the criteria for sexually violent predators do not possess all of the factors listed in the statute. (N.T., sentencing, 5/25/06, at 23.)

Appellant's expert, Dr. Foley, reviewed the same material as Dr. Valliere, but he also used the Static 99 test and determined that appellant would likely not be reconvicted. (N.T., sentencing, 5/25/06, at 46-47.) The Static 99 test is an actuarial tool that looks at unchangeable factors that an offender has. (N.T., sentencing, 5/25/06, at 26.) It categorizes individuals who share certain characteristics and based on previous studies of offenders, determines the likelihood that someone with those characteristics will be re-arrested. (N.T., sentencing, 5/25/06, at 26.) However, this analytical test does not consider all of the risk factors required by section 9795.4 and it only measures re-arrest, although research has suggested that re-offense rates are two to three times re-arrest rates.

(N.T., sentencing, 5/25/06, at 26.) Consequently, this test has only moderate predictive value. For this reason, as well as the fact that neither the Static 99 test nor any statistical analysis is required in determining whether an offender is a sexually violent predator, this court did not consider the application of the Static 99 test to appellant conclusive.

In making its determination, this court took into consideration the number and nature of the offenses, the immediate escalation of the acts, and the boldness of abusing the victim in public or when others were nearby. This court also considered the predatory nature of appellant's actions and the advantage he took of his position as C.E.'s stepfather. This court was particularly struck by Dr. Valliere's testimony regarding appellant's motivation to offend.

"Even in the face of being caught and having been caught, he continues to commit sexually aggressive crimes. This is also reiterated in the facts that Mr. Barker offended this child in a pretty high risk public situation, specifically having her—I'm sorry—having her masturbate him in public places or at least once in a public park where anybody could have encountered them.

"When we see that in sex offenders, it gives us some form of evaluation or assessment on how intense their arousal is and how many risks they're willing to take, how motivated they are through this deviance." (N.T., sentencing, 5/25/06, at 16.)

In consideration of Dr. Valliere's testimony and in consideration of all of the factors listed in the statute, this court finds by clear and convincing evidence that the

Commonwealth has established that appellant's mental abnormality makes him likely to engage in sexually violent offenses in the future, and therefore finds that appellant is a sexually violent predator.

## WEIGHT OF THE EVIDENCE

Appellant further contends that this court's determination that appellant is a sexually violent predator was against the weight of the evidence.

"The weight of the evidence is exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. McCloskey,* 835 A.2d 801, 809 (Pa. Super. 2003).

In reviewing a claim that a jury's verdict is against the evidence, the court must be guided by the principle that relief should be granted only if it finds that the verdict is so contrary to the weight of the evidence it shocks its sense of justice. *Commonwealth v. Schwartz,* 419 Pa. Super. 251, 615 A.2d 350 (1992).

The Commonwealth's evidence has been summarized above. After carefully considering the relevant facts and law, this court cannot find that its decision in this case was so contrary to the weight of the evidence that it shocks its sense of justice.

## CONCLUSION

For the reasons detailed above, this court submits that appellant's assignments of error should be denied and his judgment of sentence affirmed.